The next case this morning is number 517-0073, People v. Abuharba. Counsel, you may proceed. But before we start, I have been presented a motion that you filed just yesterday, entitled Motion to Cite Additional Authority. Is there any objection? Motion is granted. You may proceed. Thank you, Your Honors. May it please the Court? Counsel, Assistant Appellate Defender, Imphan Nam, on behalf of Mohamed Abuharba. There are three arguments on appeal. The focus today will be on the second argument. And the question before this Court is whether Mr. Abuharba's case should be remanded for further critical proceedings with the appointment of new counsel, where his pro se, post-trial allegations of ineffective assistance of counsel showed possible neglect of the case. The Krinkle standard at that initial preliminary inquiry is just for a defendant to show possible neglect by defense counsel. And Mr. Abuharba's pro se claims of ineffective assistance of counsel demonstrated possible neglect. He was able to pinpoint an exact and essential example regarding one of the State's critical witnesses, Whitney Latham. He informed the trial court that Latham had previously stated to the police that she, on previous occasions, confused Mr. Abuharba's voice with one of his brothers. And even still, which of his many brothers, it's not clear. As Mr. Abuharba claimed, this was a critical piece of evidence that went towards her credibility. He stated that had he not mentioned it to defense counsel during Latham's cross-examination, it would never have come up or made it onto the record because counsel was unaware of its existence. But it's important because it raises questions as to Latham's testimony. Mr. Abuharba further informed the court of this, that he brought it to defense counsel's attention during the trial, and that defense counsel said that he had not seen this in any of the paperwork. But that was the problem. It wasn't in the paperwork. And as Mr. Abuharba tells the court, it was in the DVDs. Even further, he says that he only saw Latham's DVD because of his old public defender, that his current defense counsel had never shown it to him. And he stated that he did not get to see all the other DVDs. This was a case where there were no eyewitnesses. There was no murder weapon recovered, and there was no direct evidence that linked Mr. Abuharba to the decedent's death. One of the state's critical witnesses was Whitney Latham. She was the one who testified that she was on the phone with the decedent on a night in question just before his death. She claimed that she heard Mr. Abuharba's voice through the phone while she was talking to Hario. So this isn't even directly on the phone where she's saying she was talking to Mr. Abuharba. She heard Mr. Abuharba's voice in the background as she was talking to Hario. So it's critical that she had previously mistaken his voice for one of his brothers. And he has a lot of brothers, as the record shows. How many? I believe there were seven brothers that he mentioned, at least in the PSIR during one of the hearings. More significantly, defense counsel was silent as to Mr. Abuharba's claims that counsel hadn't reviewed Latham's reported DVD statement to the police. So the trial court did give defense counsel an opportunity to rebut the claims. All that defense counsel did was he confirmed that Mr. Abuharba did actually bring this up during cross-examination of Latham. And defense counsel didn't rebut Mr. Abuharba's claims that he did not get to see all the other DVDs, that defense counsel did not show him Latham's DVD. So counsel remains silent as to this matter. Counsel doesn't rebut. Counsel doesn't defend. Counsel sticks to Mr. Abuharba's claims that, yes, he did tell me this during Latham's cross-examination. This shows that Mr. Abuharba at least demonstrated possible neglect. This claim does not go to a matter of trial strategy, for it cannot be considered trial strategy for an attorney not to review all of the discovery, especially one like Whitney Latham's reported statement to the police. Further, there's no mention of counsel stating there were all these other DVDs that he did review them. He doesn't rebut any of this. And as this court stated in Jackson, Mr. Abuharba's claims are sufficiently detailed. He was able to pinpoint an exact piece of evidence that he did have a chance to review with previous counsel. This counsel did not review it with him. His concerns are valid, because he's saying... I believe they just... Actually, they granted PLA a while ago. I think they, when I last checked, they finished briefing and they just argued it before the Supreme Court. And so as this court says in Jackson, it's sufficiently detailed, and it's challenging more than just mere trial strategy. And that goes to all the Supreme Court cases, regardless of Jackson's ultimate decision, that this is more than sufficiently detailed, more than just trial strategy. This shows that his claims are valid, that once defense counsel remained silent, his claims were not rebutted. He was very specific. His concerns were valid, that he didn't get to assist in his defense because he didn't see all these other DVDs. And if counsel didn't see Latham's DVD, had counsel seen all these other DVDs? Especially here, where this is a matter of credibility. Latham's credibility went against Mr. Abuharba's credibility. Thus, this was an important factor here, that she did previously confuse his voice with that of his brother's. Further, as the Illinois Supreme Court reaffirmed in Roddice, People v. Roddice, that new case, the standard is still possible neglect. And here, Mr. Abuharba met that burden. His claims weren't conclusory. He pinpointed a specific concern. This was not a matter that the trial court could have dispensed. So there are cases in Roddice that the Supreme Court cited. Chapman, Coleman, those cases were matters where the trial court could, on the face of the record, dispense of the defendant's complaint. Because, for example, I think maybe Coleman, the defendant complained that his trial court had requested or pre-trial motioned to request for a preliminary hearing. But in that case, he was never arrested. He was indicted by a grand jury, so there was no preliminary hearing that could have been requested. And there was no evidence actually recovered from him. So there was no motion to suppress evidence that could have ever been filed. So those matters, the trial court could dispense of right away, because on the face of the record, those are spurious. They were frivolous. Here, these claims are not those claims. Mr. Abuharba is claiming that trial counsel specifically did not look at critical evidence, critical discovery in the case. And, as I mentioned before, defense counsel remained silent in the midst of all these allegations. Further, the points that we make are that the trial court, in this case, while the state didn't ultimately participate, was going to give the state a chance to participate. So our argument here, in support, was that the trial court didn't know the pre-trial law completely. The trial court said that it gives the state at least an opportunity to contribute to determine if his case would go further. And, in People v. Jolly, the Supreme Court specifically said that the trial court cannot do that, that the state cannot participate, because then it becomes a... The state didn't participate. That's correct, Your Honor. But the point is to just illustrate that the trial court wasn't familiar with this painful law. That also goes to Mr. Abuharba's claims that the trial court kept trying to ask him, you know, so how do you believe this affected your case? So that's the prejudice aspect of the ineffective assistance of counsel claim. And here, all he has to establish is possible neglect. He doesn't have to fully argue every single point, every single part of prejudice, because that's what will happen when an attorney is appointed, when after the trial court is able to have an adversarial hearing, where both parties are able to input. At that point, he can or the court will be able to assess, you know, the error of the errors that counsel committed and the potential prejudice that Mr. Abuharba faced. But at this point, at the preliminary inquiry, the standard is still possible neglect. For all these issues, or for all these matters, Mr. Abuharba, unless there's any other questions, asks that this court remand for further painful proceedings pursuant to argument two. And this is plain error? Well, this is a critical inquiry, so he established that he, by arguing post-trial, that counsel was ineffective, and that counsel doesn't rebut it. This isn't a plain error argument. He at least preserved it in the sense that he brought it before the trial court, and the trial court... Yes, John. Not to jump in there, because the other two issues brought up, I think the state's argument is, he didn't remove, they're waived. For the arguments one and three? Yes. Yes, as far as I remember, well, yes, as far as I remember, at least argument one, if I can just finish, argument one was the trial attorney objected during the trial, but I can't remember if he actually did the post-trial motion. You have a chance. Yes, Your Honor. May it please the court, counsel, my name is Max Miller, and I represent the people of the state of Illinois. The defendant raised three issues on appeal, unless this court would prefer that I start with the second, I'll just do them in order, beginning with the admissibility of certain non-evidence. The trial court did not air its admission of any of this evidence, and the state would maintain that even if this court believes that some of the admissions were air, the defendant failed to properly preserve the issue or satisfy either prong of plain error review. There's really seven pieces of evidence, pieces of testimony that are challenged by the defendant in their brief. Evidence is admissible if it is relevant to an issue in dispute, and its probative value is not outweighed by its prejudicial effect. Worth noting at the outset is the murder weapon in this case was not recovered, so the case was proven by circumstantial evidence, which People v. Stone has said is sufficient to convict. The challenge evidence in order, first we have the testimony by the victim's brother concerning the defendant's brother, so we have the witnesses are the victim's brother and the defendant's brother. The victim's brother witnessed the defendant's brother leaving their shared home with a gun retrieved from the defendant's room. This is far more probative than its prejudicial. For one reason, the brother lived at home with the victim and the defendant, saw the defendant's brother leave with the gun. Now, this could be used along with the totality of the other evidence to infer the defendant owned the murder weapon for which there was no account. Now, defense counsel, when this testimony was presented, objected vigorously multiple times, I believe transcripts of it made it into both of the briefs presented, and the trial court considered these objections and limited the brother's testimony, ultimately saying, all you get from this testimony is he saw him leave the house with a gun. We don't know what type of gun it was. We don't know that it's the same as the murder weapon. We don't know that it belonged to the defendant, but we do know that the victim's brother saw him leave the house with it. That is certainly more probative than it is prejudicial. The next two pieces of gun evidence that were challenged were brought up by the defense on cross-examination. The state relies on People v. Davis citing People v. Vost, which is basically, if a defendant objects to the admission of testimony on direct, but pursues a similar line of questioning on cross-examination, any error is waived for the purposes of appeal. So because this was elicited by defense counsel, they can't go back now and say, oh, well, this was improper evidence and testimony that the trial court heard. Next, the direct testimony of the state by an expert on firearms Gambo concerning a .22 caliber semi-automatic pistol and a .32 caliber fire bullet. Concerning the .22 caliber pistol, the only testimony we get from Gambo is that it can't fire a .32 caliber bullet. So that's directly relevant because we know that that can't be the murder weapon, since a .32 caliber bullet was removed from the victim's skull and a casing was found at the scene. Why the .22 caliber pistol is relevant at all is because the defendant made a phone call from jail asking a relative to get rid of something for him. We don't know what it was. There's a debate. The state's theory of it was that he was actually asking him to get rid of one of the witnesses for the state, but the defendant countered with the theory, no, I knew that Princeton had my .22 caliber gun, and I just wanted to put him on notice about that. So it actually helps the defendant provide an alternate theory to the state's theory, which is, hey, he was about to have one of the witnesses for the state murder. So it's certainly provable. And the state's cross-examination of the guns loaned between Princeton and the defendant, it's the same argument. It's if we want to get to the bottom of knowing what exactly was the purpose of this phone call by the defendant and what was behind it, we have to know about the .22 caliber gun. Finally, the last piece of challenged evidence is the video recording of the defendant's police interview, in that the defendant, during a police interrogation, admits that he admires the .32 caliber gun. He's talking about how famous gangsters used it in crimes, and we know that in this case it was a .32 caliber bullet that killed the victim, and so it's directly relevant. Therefore, we don't believe that there was error in any admission. However, if the court disagrees, the defendants fail to satisfy either prong of plenary review, because even though the case was proved circumstantially, the evidence was not closely balanced. We have testimony by Latham and Joseph about the financial situation of William, the missing television, the tension between the defendant and the victim. We have the defendant's admiration for a weapon and its notoriety in the context of a police interview, when that same weapon and cartridge casing were found near the body. We have a timeline that supports the defendant's guilt in the area of the time of the murder, from the time of the 9-1-1 call, the video of the defendant at his friend's, Princeton and Rene Fierce, home. Police testimony about the length of the walk from the murder scene to the home, which provides an appropriate timetable for the defendants who have been present at the scene. We have testimony of the defendant's friend and girlfriend describing the demeanor of the defendant during the visit, that he was changing his clothes inexplicably, that he was rattled, that he made statements to the friend concerning murdering the victim. We have a phone call from the defendant's brother from jail, which, if the state's theory is accepted, substantiates Princeton's testimony. If you believe that the defendant was trying to get Princeton not to tell the court what conversation they had had about the victim's murder, then it makes sense that what Princeton's saying is true. Why else would he try to seek Tucson's testimony? We have the defendant's confession to Gary Sniders. He was a fellow inmate who was going to give him a tattoo for M, which is murder, and they testified. And we have the defendant's behavior during the police interview, which demonstrated the defendant's ability to commit a crime that is this callous, that is ultimately a murder over stolen property. And nothing in the record supports the theory that the trial court based its verdict on improper evidence. We have to understand that this was a bench trial. We can presume that the trial court ignored improper evidence unless something in the record firmly demonstrates that we have the judge relying on something that was improper. And so for that reason, we don't believe that there was any inadmissible evidence. Now, concerning the defendant's pro se allegations, the state obviously cites two people versus Jackson, which at this time is the law of this court. The trial court must inquire into the claim adequately. The trial court is not always required to appoint new counsel or hold full evidentiary hearings. If the claims lack merit or are merely trial strategy, the court may deny the pro se motion. The procedure is somewhat flexible, and it's appropriate for a trial court to consider its own knowledge of counsel's performance from trial. So the defendant filed a motion for a new trial, filed a supplemental motion with substantially the same claims of ineffective assistance of counsel. A preliminary crankle proceeding was held into the defendant's claims of ineffective assistance of counsel. The motions that the defendant filed made the trial court aware of the claims that were in writing, and so the trial judge said, you know, do you have any other claims that you wanted to add to this? The defendant responds claiming that defense counsel cross-examined length of time to review the DVDs.  I don't think the defendant relied on defendant prompting based off an unspecified DVD that he viewed. You know, we don't know specifically what DVD he's talking about from there. We don't know that from that statement, this somehow proves that defense counsel did not review that DVD. We do know that he also says that he requested to see all the DVDs that Discovery didn't get to. Well, when the trial court inquired on that further, they said, did you ask, you know, counsel to review these DVDs? He responded, I believe I did once or twice. I'm not 100% sure. That's far from sufficiently detailed to give rise to a view of possible neglect, and as the defendant has argued, when counsel was questioned about it, he said, I did ask that question on the cross. He didn't elaborate. So I don't know that it's appropriate to infer from that silence on that that that meant, oh, well, then he probably didn't review it. And the fact that we're talking about a question on cross-examination case law that I cited in the brief is pretty clear that cross-examination is within the purview of trial strategy. You know, it was defense counsel's decision what to cross-examine on that the defendant may have said, hey, you should ask about this, which we will just have to take as true at this point. That doesn't really impact that he was somehow committing ineffective assistance of counsel by not pursuing that. And, therefore, it's the State position that all the claims were adequately examined and rejected. And unless there's any questions. Thank you very much. Thank you, counsel. Reba? Mr. Adams, just a few points. I don't remember who stated your name for the record. I can do it. Yeah. Assistant Appellate Defender Insomniac on behalf of Mr. Avancarba. Just to get back to our discussion, the first argument we are arguing clear, and the second argument, there was a motion post-sentencing hearing that the sentence of 50 years was excessive, and trial counsel asked for the minimum during the sentencing hearing. So that one at least has a motion or a post-sentencing motion. Regarding the first argument, the State here cannot deny that this extraneous gun evidence, or at least gun evidence in general, was very important here where there was no murder weapon recovered. We have testimony from Grinston, who was one of the State's critical witnesses along with Bladesome. He testified a lot about guns. He had the guns at his place. He's also the one that admitted that he lied before to police officers, that he made statements to Mr. Avancarba's family regarding the case. So at least there's a question of credibility with Grinston, along with Bladesome. Her credibility, at least with hearing Mr. Avancarba's voice when there was confusion prior with one of the seven brothers or more than one of the seven brothers, it's not exactly clear. The argument for the first extraneous gun evidence argument is that Joseph Cariel, who's the decedent's brother, he testifies that he wasn't in the room, he didn't actually see it, but he heard bed springs. He assumed that one of Mr. Avancarba's brothers, we don't know which one, came into the house, took a gun from Mr. Avancarba's room, potentially under his bed, and that's the gun that Joseph Cariel saw for however long that exchange took place. He wasn't able to identify the gun. He didn't really know what the gun was. I think the State later says in a proffer that Joseph Cariel Googled it later. So the point here is that it was unfairly prejudicial. There was no gun evidence. Obviously the cartilage that was found, or the shell, or the bullet that was found in Mr. Cariel, that was a .32. But other than that, we have a lot of evidence about, there was one where Mr. Avancarba tells a police officer that he one day hopes to own the gun that Al Capone owned because he liked the history behind that gun. That gun ended up being a .32 caliber, but these are all guns that are not related to this exact crime. It's not related to Mr. Cariel's death. So the point here is that all this extraneous gun evidence, all this cumulative gun evidence was unfairly prejudicial to Mr. Avancarba's case. And lastly, to make a point about the second argument regarding Crankville, the state says that we don't know. We don't know exactly what defense counsel was thinking when he didn't rebut the claims or when he remained silent. We can't make an inference. And we don't know further whether there was other evidence or what type of evidence that Mr. Avancarba was talking about. But that's because the trial court cuts off Mr. Avancarba when they're having this conversation and says, we'll get to that later. Let's address this other matter. But then they don't get to it. The problem there is that if the court just asked, you know, what other DVDs are there, counsel, can you tell me what DVDs you looked at? Mr. Avancarba, what specific DVD are you talking about? He says at least that this is Latham's DVD recorded statement to the police. So at least we have that detailed, that specific piece of evidence. And I think that's enough to prove possible neglect. Defense counsel never says that he saw it, that he saw all the DVDs. And I think that's the difference between the cases such as Roddus or Jackson. Their defense counsel actively defended their representation saying, well, this issue we addressed this way. I think Jackson, there was DNA evidence. There was witnesses that the attorney didn't call. The defense attorney at that preliminary hearing defended their position saying why I didn't call those alibi witnesses, why I didn't call these two witnesses that I called at the first trial for the second trial, and why I actively defended the DNA evidence. Here, defense counsel remained silent. He has given all the chances to, you know, defend his honor in a sense, but he didn't. He just stayed silent. So Mr. Agafaro asks that this court re-enter a new trial based on the first argument or a painful hearing, at least for the second argument. Thank you, counsel. Thank you, Your Honor. The court will take this matter under advisement, issue its decision in due course.